UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DR. MUHAMMAD MIRZA and ALLIED
MEDICAL AND DIAGNOSTIC
SERVICES, LLC,

                    Plaintiffs,                                **ORDER**

          - against -                                  19 Civ. 6444 (PGG)

DOLCE VIDA MEDICAL SPA, LLC and
SCOTT CALLAHAN,

                    Defendants.

PAUL G. GARDEPHE, U.S.D.J.:

          This action stems from an allegedly defamatory email widely disseminated by

Defendants Scott Callahan and Dolce Vida Medical Spa, LLC ("Dolce Vida").  Plaintiffs Dr.

Muhammad Mirza and Allied Medical and Diagnostic Services, LLC ("Allied Medical") assert

claims for false advertising in violation of the Lanham Act, unfair competition, unfair and

deceptive trade practices in violation of New York General Business Law § 349, trade libel and

defamation, and misappropriation of likeness.  (Cmplt. (Dkt. No. 1) ¶¶ 1-3, 51-78)

          Defendants have moved to dismiss for lack of personal jurisdiction and improper

venue or, in the alternative, to transfer this case to the District of Connecticut.  (Mot. (Dkt. No.

30); Def. Br. (Dkt. No. 32))  For the reasons stated below, the motion to dismiss for lack of

personal jurisdiction will be granted.

## **BACKGROUND**

### I.     **FACTS**

          Dr. Mirza is "board-certified in internal medicine and licensed to practice

medicine in the states of New York and New Jersey."  (Cmplt. (Dkt. No. 1) ¶¶ 4; see also id. ¶ 20

(stating that "Dr. Mirza visits different offices on different days for the convenience of his patients, but his principal office is [in New York]"))  Dr. Mirza is domiciled in New Jersey.  (Id. ¶ 4)  Allied Medical is Dr. Mirza's medical practice.  (Id. ¶ 17)  Allied Medical "is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in [New York]."  (Id. ¶ 5)

"Callahan is an individual domiciled in the State of Connecticut, . . . and is the principal, owner, operator and sole member of Dolce Vida."  (Id. ¶ 7; see id. ¶¶ 8-11 (asserting that Callahan and Dolce Vida are interchangeable))  "Dolce Vida is a limited liability company organized and existing under the laws of the State of Connecticut, with a principal place of business" in Connecticut.  (Id. ¶ 6)  The Complaint further asserts that Dolce Vida "advertises and transacts business in the State of New York and within this judicial district."  (Id.) According to Plaintiffs, Defendant Callahan is a "competing medical professional," and "Defendants continuously and systematically conduct and transact business and provide health care services in competition with Plaintiffs in this District."  (Id. ¶ 26)

The Complaint alleges that in "June 2019, Defendants perpetuated [sic] an attack campaign against Plaintiffs by communicating false, defamatory and completely fabricated statements directly to the general public and Plaintiffs' customers – in order to promote their competing business, products and services."  (Id. ¶ 28)  According to Plaintiffs, "[o]n or around June 4, 2019, Defendant[s] created, or caused to be created, a false, misleading and defamatory negative, email blast campaign that denigrates Plaintiffs' services . . . [which] was viewed by thousands of email recipients, including some of Plaintiffs' own clients and patients, and Defendants continue to defame and injure Plaintiffs with this false, negative ad."  (Id. ¶ 2)

The June 4, 2019 email (hereinafter, the "Email") begins with the phrase "Attention Dolce Vida Clients," includes a photo of Dr. Mirza, and states: "If you have received any services from Dr. Muhammed Mirza in the Past 2 years and have experienced any complications, problems, or issues please contact us directly. We are working with the Department of Public Health." (See Cmplt., Ex. A (Dkt. No. 1-1)) The following email address was printed below this message: "CallahanScott@msn.com." (Id.; see also Cmplt. (Dkt. No. 1) ¶¶ 29-31) The Complaint asserts, "[u]pon information and belief, [that] hundreds, if not thousands, of recipients received the mass email blast from Defendants – including some of whom reside and/or received such message in the State of New York." (Id. ¶ 33)

Plaintiffs further claim, "[u]pon information and belief, [that] Defendants began systematically emailing and messaging various clients and potential customers of Plaintiffs in an effort to get those customers to either stop doing business with Plaintiffs, or induce them not to start doing business with Plaintiffs – and to purchase Defendants' competing products and services instead." (Id. ¶ 43; see id. ¶ 46 ("Upon further information and belief, from January 2019 to the present, Defendants have communicated these same false and defamatory statements to several of Plaintiffs' customers, via email, social media, orally and elsewhere in writing."))[1]

---

[1] Callahan states that he became aware of Dr. Mirza after several of his patients reported negative experiences with Dr. Mirza, and after viewing a Vice Media production entitled "One of Yelp's Worst-Rated Plastic Surgeons: I Got Work Done | One Star Reviews." According to Callahan, the Vice Media piece "shows many serious complaints posted by patients on the online review platform Yelp, including allegations that the products Dr. Mirza uses are not authentic." (Callahan Decl. (Dkt. No. 31) ¶ 20) Callahan alleges that Dr. Mirza provides medical services in Connecticut as well as elsewhere, and states that he reported his concerns about Dr. Mirza to the Connecticut Department of Public Health. (Id. ¶¶ 14-17, 21) Callahan acknowledges that he sent the Email. (Id. ¶ 22)

## II.    PROCEDURAL HISTORY

The Complaint was filed on July 11, 2019.  (Dkt. No. 1)  On August 30, 2019,

Defendants filed a pre-motion letter asserting, inter alia, that this case should be dismissed for

lack of personal jurisdiction and improper service or, in the alternative, transferred to the District

of Connecticut.  (Aug. 30, 2019 Def. Ltr. (Dkt. No. 15) at 1)[2]

In an October 30, 2019 order, this Court directed the parties "to conduct

jurisdictional discovery over the next 30 days, and to present their findings in a joint letter to the

Court by December 2, 2019," at which time Defendants could renew "their request to file a

motion to dismiss. . . ."  (Oct. 30, 2019 Order (Dkt. No. 20))

In a January 29, 2020 letter, Defendants reported that "[t]he parties do not agree

as to the bases of this Court's exercise of personal jurisdiction over Defendants."  (Jan. 29, 2020

Joint Ltr. (Dkt. No. 28))  Defendants requested that the Court adopt the parties' proposed

briefing schedule regarding Defendants' motion to dismiss.  (Id.)  On January 30, 2020, the

Court approved the parties' proposed briefing schedule.  (Dkt. No. 29)[3]

## DISCUSSION

Plaintiffs contend that this Court has general personal jurisdiction over the

Defendants pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 301, and specific personal

jurisdiction over the Defendants pursuant to N.Y. C.P.L.R. § 302(a)(1) and (a)(3).  (Pltf. Opp.

---

[2]  All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

[3]  In a June 7, 2021 letter, Plaintiffs reported that "on June 4, 2021, [P]laintiffs filed suit in the District of Connecticut against [D]efendants, asserting similar claims as set forth herein.  That action is entitled Dr. Muhammed Mirza et al. v. Dolce Vida Medical Spa, LLC et al., Case No. 3:21-cv-00772."  (June 7, 2021 Pltf. Ltr. (Dkt. No. 36) at 2)  The Connecticut action has been stayed pending resolution of the instant motion.  (Dr. Muhammed Mirza et al. v. Dolce Vida Medical Spa, LLC et al., No. 3:21-cv-00772 (D. Conn.) (Dkt. No. 11))

(Dkt. No. 34) at 18-22)  Defendants contend that this action must be dismissed because this

Court lacks personal jurisdiction over them.  (Def Br. (Dkt. No. 32) at 11)

## I.   <u>LEGAL STANDARDS</u>

"The plaintiff bears the burden of establishing that the court has jurisdiction over

the defendant when served with a Rule 12(b)(2) motion to dismiss."  <u>Whitaker v. Am.</u>

<u>Telecasting, Inc.</u>, 261 F.3d 196, 208 (2d Cir. 2001).  The nature of plaintiff's burden "varies

depending on the procedural posture of the litigation."  <u>Ball v. Metallurgie Hoboken-Overpelt,</u>

<u>S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990).  Prior to discovery, a plaintiff may carry this burden "by

pleading in good faith . . . legally sufficient allegations of jurisdiction.  At that preliminary stage,

the plaintiff's <u>prima</u> <u>facie</u> showing may be established solely by allegations."  <u>Id.</u>  "In contrast,

when an evidentiary hearing is held, the plaintiff must demonstrate the court's personal

jurisdiction over the defendant by a preponderance of the evidence."  <u>Metro. Life Ins. Co. v.</u>

<u>Robertson-Ceco Corp.</u>, 84 F.3d 560, 567 (2d Cir. 1996).

"Where as here . . . the parties have conducted . . . discovery regarding the

defendant's contacts with the forum state, but no evidentiary hearing has been held[,] the

plaintiff's <u>prima</u> <u>facie</u> showing, necessary to defeat a jurisdiction testing motion, must include an

averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant."

<u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999)

(citations and quotation marks omitted).  Plaintiff may make this showing through "affidavits

and supporting materials."  <u>S. New England Tel. Co. v. Glob. NAPs Inc.</u>, 624 F.3d 123, 138 (2d

Cir. 2010) (citation and quotation marks omitted).  Accordingly, where jurisdictional discovery

has taken place, the Court may consider materials outside of the pleadings, but the materials

must be construed "in the light most favorable to plaintiffs, resolving all doubts in their favor."

Id. (citation and quotation marks omitted); see also Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp., No. 05 Civ. 4960 (LAP), 2010 WL 2835567, at *2 (S.D.N.Y. July 13, 2010) (same).

The determination of whether a federal court has personal jurisdiction over a defendant involves a "two-part inquiry." Metro. Life Ins., 84 F.3d at 567. The court "must [first] determine whether the plaintiff has shown that the defendant is subject to personal jurisdiction under the forum state's laws[.]" Id. The court "must [then] assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." Id.; see also Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163-64 (2d Cir. 2010) ("To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis. First, we apply the forum state's long-arm statute . . . . If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." (citations omitted)). "Where, as here, the plaintiffs premise their theory of personal jurisdiction upon the New York long-arm statute, [courts] first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause.'" Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012) (citing Chloé, 616 F.3d at 163-64).

"[C]ontacts with [a] forum may confer two types of jurisdiction – specific and general." In re Parmalat Sec. Litig., 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005) (footnote omitted). General jurisdiction "'is based on the defendant's general business contacts with the

forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'" Id. (quoting Metro. Life Ins. Co., 84 F.3d at 568).  "Specific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]'" Id. (quoting Metro. Life Ins., 84 F.3d at 567-68).

A.    **General Personal Jurisdiction**

For a court "[t]o exercise general personal jurisdiction over a foreign corporation under [New York's general jurisdiction provision, N.Y. C.P.L.R. § 301]," "the defendant must be engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." Lear v. Royal Caribbean Cruises Ltd., No. 20 Civ. 4660 (GHW), 2021 WL 1299489, at *4 (S.D.N.Y. Apr. 7, 2021) (citation and quotation marks omitted); see id. (explaining that the "doing business" test can also be applied to non-resident individuals); id. (explaining that Section 301 "allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, or . . . 'do business' in New York" (citation, quotation marks, and alternation marks omitted)). "Occasional or casual business in New York does not confer general jurisdiction in New York such that a foreign corporation may be sued in New York on causes of action that are wholly unrelated to its activities in New York." Phillips v. Reed Grp., Ltd. 955 F. Supp. 2d 201, 226 (S.D.N.Y. 2013); see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) ("In order to establish that this standard is met, a plaintiff must show that a defendant engaged in continuous, permanent, and substantial activity in New York.")).

7

"For a defendant corporation, the 'paradigm forum' for general jurisdiction is the place 'in which the corporation is fairly regarded as at home,' specifically its place of incorporation or principal place of business." Lopez v. Shopify, Inc., No. 16 Civ. 9761 (VEC) (AJP), 2017 WL 2229868, at *5 (S.D.N.Y. May 23, 2017), report and recommendation adopted, No. 16 Civ. 9761 (VEC) (RWL), 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)); see also Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) ("[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" (citation omitted)).  "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016); see also Reich v. Lopez, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014) ("For general jurisdiction over an individual to comport with due process, Defendants must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction.  Only on truly 'exceptional' occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile." (citation omitted)).

**B.**     **Specific Personal Jurisdiction**

N.Y. C.P.L.R. § 302(a) governs specific jurisdiction.  See Accurate Grading Quality Assur., Inc. v. Thorpe, No. 12 Civ. 1343 ALC, 2013 WL 1234836, at *2 (S.D.N.Y. Mar. 26, 2013) ("It is axiomatic that Section 302(a) provides only specific jurisdiction[] over a non-domiciliary defendant arising out of particular acts" (citation omitted)).  N.Y. C.P.L.R. § 302(a) provides that,

[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> . . .
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

N.Y. C.P.L.R. §§ 302(a)(1), (a)(3).

In applying N.Y. C.P.L.R. § 302(a)(3), "courts . . . look to the substance, not merely the name, of a claim in order to determine whether that claim sounds in defamation." Senese v. Hindle, No. 11 Civ. 0072 (RJD), 2011 WL 4536955, at *11 (E.D.N.Y. Sept. 9, 2011) (citation, quotation marks, and alternation marks omitted); see also Fischer v. Stiglitz, No. 15 Civ. 6266 (AJN), 2016 WL 3223627, at *4 (S.D.N.Y. June 8, 2016) (same). "Both subparagraphs [(a)(2) and (a)(3)] exclude a cause of action for defamation[,] . . . [and if] [a]ll of plaintiffs' claims are based upon . . . alleged defamatory statements[,] . . . [p]laintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation." Cantor Fitzgerald, L.P., v. Peaslee, 88 F.3d 152, 157 (2d Cir. 1996) (citations and quotation marks omitted); see also Symmetra Pty Ltd. v. Human Facets, LLC, No. 12 Civ. 8857 SAS, 2013 WL 2896876, at *5 (S.D.N.Y. June 13, 2013) ("Sections 302(a)(2) and (3) . . . expressly exclude actions for defamation, due to the judgment of New York's legislature that

subjecting out of state defendants to suit in New York solely on the basis of defamation would chill free expression." (footnote citation omitted)). "However, personal jurisdiction over a claim for defamation may still be obtained under the transacting-business prong of the long-arm statute" – i.e., § 302(a)(1). Symmetra, 2013 WL 2896876, at *5.

Under N.Y. C.P.L.R. § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary that "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R § 302(a)(1). "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citation and alteration marks omitted).

Under the first prong of this test, "[c]ourts look to the totality of the defendant's activities within the forum[] to determine whether a defendant has 'transacted business' in such a way that it constitutes 'purposeful activity'. . . ." Id. (citations and alteration marks omitted); CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) ("A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." (citations, quotation marks, and alteration marks omitted)).

As to the second prong, "a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Van Lines, 490 F.3d at 246 (citation and quotation marks omitted); see also id. ("New York decisions . . . , at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the

constitutional standard:  whether the defendant's conduct constitutes 'purposeful availment' of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citation, quotation marks, and alteration marks omitted)).

As to defamation claims, "when the defamatory publication itself constitutes the alleged 'transaction of business' for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it."  Id. at 248 (alteration marks omitted).

## II.    **ANALYSIS**

Defendants contend that Plaintiffs' claims sound in defamation, and that "even after completing jurisdictional discovery, Plaintiffs cannot establish any specific facts to show that either defendant regularly does business in New York, or that either defendant specifically targeted New York or was connected to New York in any way that related to the alleged defamatory email." (Def. Br. (Dkt. No. 32) at 5-6)  Accordingly, Defendants argue that the case should be dismissed for lack of personal jurisdiction and improper venue or, in the alternative, transferred to the District of Connecticut, where "[t]he [c]ourt . . . has personal jurisdiction over the Defendants" and which is a "proper and convenient forum for Plaintiffs."  (Id. at 5-7)

Plaintiffs contend that Defendants are subject to general jurisdiction in New York, asserting that they "have an office in Manhattan, have employees who reside in New York, executed a contract with a New York-resident physician, and regularly solicit customers in New York through email and via social media."  (Pltf. Opp. (Dkt. No. 34) at 6)  Defendants further contend that "Callahan is a New York-licensed physician assistant."  (Id. at 5)  According to Plaintiffs, "Defendants are essential[ly] at home in New York."  (Id. at 6)

Plaintiffs further contend that "the exercise of specific personal jurisdiction is reasonable given [that] the tortious conduct [is] alleged to have taken place and/or [was] felt [in New York]."  (Id.)  "[V]enue in New York, where Plaintiffs' principal place of business is located and where hundreds of recipients of Defendants' email ad reside, is proper."  (Id.)

### A.   Defendants' Alleged Jurisdictional Contacts

Callahan states that he resides in Connecticut; is the founder and chief executive officer of Dolce Vida, a Connecticut corporation with three locations in that state; and that he works exclusively at Dolce Vida's Connecticut locations.  (Callahan Decl. (Dkt. No. 31) ¶¶ 2-4)  Callahan further states that (1) he has never treated any patients in New York and has never derived any revenue from New York; and (2) Dolce Vida has no offices in New York, has never treated patients in New York, and has not derived revenue from New York.  (Id. ¶¶ 7-8)  According to Callahan, Defendants "have never had any officers or employees in New York state"; "have never leased or owned any retail space, plant, offices, warehouse or other type of real or business property in New York State"; "have never had any bank accounts in New York State"; "have never commenced any legal action in New York State or participated in any legal action in New York State"; and "have never designated anyone to accept service of process for them in New York State."  (Id. ¶¶ 9-13)  Callahan further states that (1) Dolce Vida's employees – who are potential witnesses in this case – live and work in Connecticut; (2) the vast majority of Dolce Vida's patients reside in Connecticut; and (3) "[a]ll of Defendants' documentary evidence related to this case is located in Connecticut."  (Id. ¶¶ 28-29)

Callahan admits that he sent the June 4, 2019 Email to all of Dolce Vida's clients.  (Id. ¶ 22)  While "all of Dolce Vida's clients were seen exclusively in Connecticut," Callahan concedes that "a small percentage . . . of those clients provided a New York address when they

were seen at one of Dolce Vida's Connecticut locations." (Id. ¶ 24)  According to Callahan, "[n]othing to do with the [Email] . . . occurred in, or was specifically directed to[,] New York." (Id. ¶ 26; see also id. ¶ 27 (stating that Callahan was in Connecticut when he drafted and sent the Email))

Plaintiffs responds that "Defendants' own email advertisements, websites and social media posts indicate a substantial connection to the State of New York – such that they might be subject to general jurisdiction even without consideration of the allegations of specific jurisdiction in the Complaint." (Mercer Decl. (Dkt. No. 35) ¶ 20 (emphasis in original)); see also (Pltf. Opp. (Dkt. No. 34) 13-17) (citing Mercer Decl. (Dkt. No. 35), Exs. 7-12)  In support of this argument, Plaintiffs cite an email that Defendants allegedly sent to their customers that "tout[s] 'Dolce Vida's new New York and CT locations!'"[4]  (Mercer Decl. (Dkt. No. 35) ¶ 21 (quoting Mercer Decl., Ex. 7 (Dkt. No. 35-7)))  According to Plaintiffs, in this email Defendants "claim to have an office at '240 Central Park South, New York, NY, 10019,'" and to be working "with two New York-registered doctors Craig Ziering and Arnold Rivera." (Id.; see also id. ¶¶ 22-23)

Plaintiffs further argue that "[f]or at least three years prior to the filing of this lawsuit," Defendants' website – www.dolceviamedspa.com – had "advertised" both Connecticut locations and a New York "satellite office" located at 240 Central Park South. (Id. ¶¶ 24-27 (citing Mercer Decl., Ex. 8 (Dkt. No. 35-8)))

Plaintiffs also cite to reviews on Yelp, arguing that certain of the Yelp reviewers live in New York. (Id. ¶ 29 (citing Mercer Decl., Ex. 9 (Dkt. No. 35-9)))

Plaintiffs further note that Defendants' posts on Instagram and Facebook reference "Training Courses in NYC" and use hashtags like "#medspanyc" and

---

[4] The date of the email is not apparent from the exhibit.

"#docmanhattan." (Id. ¶ 30 (citing Mercer Decl., Ex. 10 (Dkt. No. 35-10) (emphasis omitted))

Plaintiffs also point to a March 2018 press release posted online by Defendants stating that

"'Dolce Vida's newest location is convenient to all of its Fairfield County and New York

clients.'"[5] (Id. ¶ 31 (quoting Mercer Decl., Ex. 11 (Dkt. No. 35-11) (emphasis omitted)))[6]

Plaintiffs further contend that a spreadsheet produced by Defendants in discovery

– purporting to list all of Defendants' patients who were sent the Email – shows that Defendants

have clients who reside in New York:

> Defendants' spreadsheet demonstrates that they sent the [Email] to at least 4,774
> customers . . . [and] Defendants admit that 110 of them reside in the State of New
> York . . . [but] 291 of them might also reside in New York, because the "State"
> and "address" columns for those customers are blank.  Thus, somewhere between
> 110 and 401 New York residents both received the [Email] at issue and engaged
> in some business with Defendants.

(Mercer Decl. (Dkt. No. 35) ¶ 35 (citing Mercer Decl., Ex. 2 (Dkt. No. 35-2) (emphasis

omitted)); id. ¶¶ 9-10, 34, 36; see id. ¶ 40 ("somewhere between 29 and 95 customers in New

York both saw the [Email] and engaged [in] business with Defendants thereafter'); id. ¶ 41

(asserting that Callahan is a licensed physician assistant in the State of New York (citing Mercer

Decl., Ex. 12 (Dkt. No. 35-12)); id. ¶ 13 (same (citing Mercer Decl., Ex. 4 (Dkt. No. 35-4))

**B.    <u>Whether General Personal Jurisdiction Exists</u>**

As discussed above, under N.Y. C.P.L.R. § 301, foreign corporations and non-

residents are subject to general personal jurisdiction where they have "engaged in such a

---

[5]  The "newest location" referenced in the press release was located at 1799 Post Road, Westport,
CT 06880.  (Mercer Decl., Ex. 11 (Dkt. No. 35-11) at 1)
[6]  Defendants deny ever treating patients in New York, deriving revenue from New York, or
leasing or owning property in New York.  (Callahan Decl. (Dkt. No. 31) ¶¶ 7-13)  In responding
to Plaintiffs' document requests, "Defendants state that they never rented space at 240 Central
Park South, New York, NY, 10019 or anywhere else in New York."  (Mercer Decl., Ex. 3 (Dkt.
No. 35-3) at 16.  As to the hashtag "#docmanhattan," Defendant say that it refers to Dr. William
Gael, "who has no affiliation with Defendants."  (Id. at 9)

continuous and systematic course of 'doing business' [in New York] as to warrant a finding of [their] 'presence' in this jurisdiction." Lear, 2021 WL 1299489, at *4 (citation and quotation marks omitted); see id. (explaining that the "doing business" test can also be applied to non-resident individuals).  Solicitation of business in New York is generally not sufficient – standing alone – to demonstrate that a corporation or individual is "doing business" in this state, absent evidence of "a permanent location within the state."  See Laufer v. Ostrow, 55 N.Y.2d 305, 310 (1982) (holding that solicitation of business alone does not demonstrate that a corporation is present in New York for purposes of N.Y. C.P.L.R. § 301); Schultz v. Ocean Classroom Foundation, Inc., No. 01 Civ. 7487 (DAB), 2004 WL 488322, at *4 (S.D.N.Y. Mar. 15, 2004) (explaining that the "solicitation plus" doctrine permits the exercise of general jurisdiction under N.Y. C.P.L.R. § 301 where the solicitation of business is "substantial and done from a permanent location within the state").

Here, the Complaint pleads that (1) Dolce Vida "is a limited liability company organized and existing under the laws of the State of Connecticut, with a principal place of business at 140 Monroe Turnpike, Suite D, Trumbull, CT 06611"; and (2) that "Defendant Callahan is an individual domiciled in the State of Connecticut, residing at 264 Teller Road, Monroe, CT 06468." (Cmplt. (Dkt. No. 1) ¶¶ 6-7)  Plaintiffs' allegations thus demonstrate that Callahan is a non-resident and that Dolce Vida is a foreign corporation.

Plaintiffs contend, however, that Defendants maintained an office at 240 Central Park South, New York, NY, and have attached a Dolce Vida advertisement stating that "Dr. Craig Ziering[] will be performing Hair and Eyebrow Transplants at Dolce Vida's new New York . . . location[] . . . [at] 240 Central Park South, New York, NY." (Pltf. Opp. (Dkt. No. 34) at 13; see also Mercer Decl., Ex. 3 (Dkt. No. 35-3) at 16)

Defendant Callahan has submitted a declaration stating, however, that Defendants have never (1) treated patients in New York; (2) had officers or employees in New York; (3) owned or leased property in New York; (4) maintained bank accounts in New York; (5) commenced or participated in any legal actions in New York; or (6) "designated anyone to accept service of process for them in New York." (Callahan Decl. (Dkt. No. 31) ¶ 13; id. ¶¶ 3-12)  As to Dr. Ziering and his office at 240 Central Park South, Defendants note the reference to "will be" in the advertisement, and explain that although Dolce Vida believed [at the time of the Email] that it would open a New York office, . . . that never happened." (Callahan Decl. (Dkt. No. 31) ¶ 9; see also Dec. 2, 2019 Joint Ltr. (Dkt. No. 21) at 3 ("As explained to Plaintiffs' counsel, Defendants have never had a New York office or treated any patients in New York. Plaintiffs correctly point out that at one time Defendants planned to open a New York office, but it never happened."); Mercer Decl., Ex. 3 (Dkt. No. 35-3) at 16 ("Defendants state that they never rented space at 240 Central Park South, New York, NY, 10019 or anywhere else in New York"); Def. Reply Br. (Dkt. No. 33) at 6 (noting that only a Connecticut telephone number is listed on the email that Plaintiffs' cite and that there is "no New York phone number associated with the 'new' address," which never came to be))  There is no contrary evidence.[7]

The other facts cited by Plaintiffs (Pltf. Opp. (Dkt. No. 34) at 12-15; 19) are likewise not sufficient to demonstrate that Dolce Vida and Callahan engaged in a "continuous

---

[7]  Plaintiffs also point to a "Medical Director Supervision Agreement" entered into between Callahan and Dr. Rae Lynne Kinler, and note that Kinler's "LinkedIn profile" indicates that she resides in Brooklyn and works in Manhattan. (Mercer Decl. (Dkt. No. 35) ¶¶ 14-15 (citing Mercer Decl, Ex. 5 (Dkt. No. 35-5) and Ex. 6 (Dkt. No. 35-6)))  Dr. Kinler's LinkedIn profile, however, also indicates that she performs hair restoration surgery for "Ziering Medical and Hair Centers, PC." (Mercer Decl., Ex. 6 (Dkt. No. 35-6) at 1)  As discussed above, Defendant Callahan represents that while a partnership between Defendants and Dr. Ziering was contemplated, the partnership was never finalized. (Callahan Decl. (Dkt. No. 31) ¶ 9)

and systematic course of doing business" in New York.  Lear, 2021 WL 1299489, at *4.  For

example, the fact that the State of New York has granted a physician assistant's license to

Callahan does not demonstrate that he was doing business in New York.  (See Pltf. Opp. (Dkt.

No. 34) at 19)  And while (1) certain Yelp reviews of Dolce Vida were prepared by New York

residents; and (2) some of Dolce Vida's patients are New York residents, these facts are not

sufficient to demonstrate that Defendants were doing business in New York.  (Id. at 15)

        In sum, Plaintiffs have not offered evidence rebutting Callahan's declaration

stating that Defendants have never (1) treated patients in New York; (2) had officers or

employees in New York; (3) owned or leased property in New York; (4) maintained bank

accounts in New York; (5) commenced or participated in any legal actions in New York; or (6)

"designated anyone to accept service of process for them in New York."  (Callahan Decl. (Dkt.

No. 31) ¶ 13; id. ¶¶ 3-12)

        As discussed above, general jurisdiction is found where a corporation or

individual is "at home," Daimler, 571 U.S. at 139, and nothing in the record suggests that either

Callahan or Dolce Vida are "at home" in New York.  See Brown, 814 F.3d at 627, 629

("[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at

home' only where it is incorporated or maintains its principal place of business. . . .  And so,

when a corporation is neither incorporated nor maintains its principal place of business in a state,

mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up

to an 'exceptional case.'"); Reich, 38 F. Supp. 3d at 455 ("For general jurisdiction over an

individual to comport with due process, Defendants must be domiciled in New York, served in

New York, or have otherwise consented to the court's jurisdiction.  Only on truly 'exceptional'

occasions may general jurisdiction extend over individuals who are 'at home' in a state that is not otherwise their domicile." (citation omitted)).

Accordingly, this Court may not exercise general personal jurisdiction over the Defendants pursuant to N.Y. C.P.L.R. § 301.

**C.    Whether Specific Personal Jurisdiction Exists**

Plaintiffs contend that this Court has specific personal jurisdiction over the Defendants pursuant to N.Y. C.P.L.R. §§ 302(a)(1) and (a)(3).  (Pltf Opp. (Dkt. No. 34) at 19-22)

**1.    Whether Defendants Transacted Business in New York and Whether Plaintiffs' Claims Arise Out of that Transaction**

As discussed above, under N.Y. C.P.L.R. § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state" where plaintiff's "cause of action arises from such business transaction."  N.Y. C.P.L.R § 302(a)(1); Best Van Lines, 490 F.3d at 246.  To establish personal jurisdiction under this provision, "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'arises from' such a business transaction."  Best Van Lines, 490 F.3d at 246 (citation and alteration marks omitted).

To determine whether a defendant "transacts business" in New York, "[c]ourts look to the totality of the defendant's activities within the forum. . . ."  Id. (citation and quotation marks omitted).   "Transacts business" is defined as "purposeful activity," meaning "some act by which the defendant purposefully avails itself of the privilege of conducting activities within" New York, so as to invoke "the benefits and protections of its laws."  Id. (citation and quotation marks omitted); see also Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen, No. 12 Civ. 6390 (JPO), 2013 WL 1775440, at *4 (S.D.N.Y. Apr. 25, 2013) (under § 302(a)(1), "[t]he

18

overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York" (citation and quotation marks omitted)).  Moreover, New York courts have held that the alleged transaction of business must include something more than the mere transmission of defamatory statements into the forum state.  See Best Van Lines, 490 F.3d at 248-49 (citing cases); see id. at 249 ("To be sure, New York courts have found jurisdiction in cases where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers, but only where the conduct also included something more."); id. (citing the drafting of a defamatory letter in New York as an example of "something more").

       "Although it is impossible to precisely fix those acts that constitute a transaction of business[,] . . . it is the quality of the defendants' New York contacts that is the primary consideration."  Licci, 673 F.3d at 62.  "[W]here the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship, a non-domiciliary can be said to transact business within the meaning of [§] 302(a)(1)."  Hillel v. Obvio Health USA, Inc., No. 20 Civ. 4647 (LAP), 2021 WL 229967, at *4 (S.D.N.Y. Jan. 21, 2021) (citation and quotation marks omitted).

       Here, as discussed above, Defendants deny that they have ever treated patients in New York, derived revenue from New York, maintained offices or bank accounts in New York, had officers or employees in New York, leased or owned "retail space, plant, offices, warehouse or other type of real or business property in New York," participated in legal actions in New York, or designated anyone to accept service of process for them in New York.  (Callahan Decl. (Dkt. No. 31) ¶¶ 7-13)  Callahan also avers that he sent the Email to Dolce Vida's clients from Connecticut, and that while "all of Dolce Vida's clients were seen exclusively in Connecticut, a

small percentage . . . of those clients provided a New York address when they were seen at one of

Dolce Vida's Connecticut locations."  (Id. ¶¶ 22, 24, 27)  Defendants have likewise represented

"that they never rented space at 240 Central Park South . . . or anywhere else in New York" and

that they have no employment or business relationship with Dr. Craig Ziering.  (Mercer Decl.,

Ex. 3 (Dkt. No. 35-3) at 16, 26)

Plaintiffs cite the following alleged facts in arguing that Defendants have

transacted business in New York:

> (1) On June 4, 2019, Defendants sent an email advertisement to nearly 4,800
> people across the United States, including New York. (2) Specifically, somewhere
> between 110 and 401 New York residents both received the email ad at issue and
> engaged in some business with Defendants. (3) The subject email advertisement is
> about a New York-based business and a competitor of Defendants, to wit:
> Plaintiffs. (4) The subject email advertisement says the words "New York." (5)
> The subject email advertisement concerns Defendants' competing business and
> solicits recipients to contact them. (6) At least 8 email ad recipients did contact
> Defendant Callahan and aver to have had some business with Plaintiffs.  Upon
> information and belief (as Defendants have redacted those names), those 8
> recipients reside in New York, and/or at a minimum, engaged with Plaintiffs in
> New York. (7) Callahan is licensed in the State of New York for the services that
> he advertised in the email ad. (8) Defendants' social media advertisements target
> New York, insofar as they use hashtags with "NYC" and "Manhattan" routinely.
> (9) Defendants admit to having New York-resident customers. Finally, (10)
> Defendants have contracted with a New York-resident physician to conduct their
> competing services. Thus, even were Callahan's declaration true in some regards,
> i.e. that Defendants mainly operate in Connecticut, their actions and conduct
> above are more than sufficient contacts to satisfy CPLR § 302(a)(1).

(Pltf. Opp. (Dkt. No. 34) 20-21)

The fact that Defendants have sent advertising material into New York and that

some of Defendants' patients reside in New York is not sufficient to demonstrate that Defendants

have transacted business in New York.  "Even advertisements that target New Yorkers are not

sufficient unless supplemented by business transactions occurring in the state . . . or . . .

accompanied by a fair measure of the defendant's permanence and continuity in New York

which establishes a New York presence." Panacea Sols., Inc. v. Roll, No. 05 Civ. 10089 (RCC),

2006 WL 3096022, at *3 (S.D.N.Y. Oct. 31, 2006) (citation and quotation marks omitted);

Gilbert v. Indeed, Inc., No. 20 Civ. 3826 (LJL), 2021 WL 169111, at *26 (S.D.N.Y. Jan. 19,

2021) (same).  Acknowledging Plaintiffs' allegations that certain of Defendants' patients reside

in New York, there is no evidence that Defendants ever treated any patients in New York, or that

they ever maintained an office in New York.[8]

> Accordingly, Plaintiffs have not sufficiently shown that Defendants transacted

business in New York such that the Court may exercise specific personal jurisdiction over them.[9]

---

[8]  That Callahan is licensed in New York is likewise not sufficient for a finding of specific
personal jurisdiction.  See Hermann v. Sharon Hospital, Inc., 135 A.D.2d 682, 683-84 (2d Dept.
1987) ("The hospital maintains no offices in New York, and it is licensed and conducts its
health-care activities solely in the State of Connecticut.  The fact that some of the defendant
hospital's physicians are licensed to practice in both New York and Connecticut and that a
sizeable portion of its patients reside in New York is due to the hospital's close geographical
proximity to New York, and not to any significant purported activities by the hospital in New
York State.").

Callahan's agreement with Dr. Kinler is likewise insufficient because – as discussed above – she
is affiliated with Ziering Medical and Hair Centers, PC, and Defendants have represented –
without contradictory evidence from Plaintiffs – that their arrangement with Dr. Ziering was
never consummated.  (Mercer Decl., Ex. 6 (Dkt. No. 35-6) at 1)

[9]  The cases cited by Plaintiffs are not to the contrary.  (See Pltf. Opp. (Dkt. No. 34) at 20-21)  In
Deutsche Bank Securities, Inc. v. Montana Board of Investments, for example, the New York
Court of Appeals found that personal jurisdiction was properly exercised where the defendant
was "a sophisticated institutional trader that entered New York to transact business here by
knowingly initiating and pursuing a negotiation with [plaintiff's employee] in New York that
culminated in the sale of $15 million in bonds."  Deutsche Bank Securities, 7 N.Y.3d 65, 72
(2006).  Similarly, in Brown v. Web.com Group, Inc., the court found it had personal jurisdiction
over the defendant where its website was "a vehicle for business deals – namely, the sale and
delivery of website hosting and marketing services—between Defendants and its customers,
wherever they may be."  Brown, 57 F. Supp.3d 345, 357 (S.D.N.Y. 2014)  And in Cohen v.
BMW Investments L.P., the court found, inter alia, that defendant had contracted with a
company with offices in New York, had negotiated the underlying agreement in New York, had
participated in telephone conferences with people in New York, sent letters to New York
personnel about the agreement, and had sent $300,000 to an account in New York.  Cohen, 144
F. Supp.3d 492, 498 (S.D.N.Y. 2015).

Even if Plaintiffs had shown that Defendants transacted business in New York, Plaintiffs cannot show that their causes of action arise out of that transaction of business. Plaintiffs' claims here arise solely out of the allegedly defamatory Email transmitted by Defendants, which Plaintiffs characterize as an "advertisement." (Pltf. Opp. (Dkt. No. 34) 20-21) As discussed above, "advertisements that target New Yorkers are not sufficient unless supplemented by business transactions occurring in the state . . . or . . . accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence." Panacea Sols., 2006 WL 3096022, at *3. Here, Plaintiffs have not offered facts showing either that Defendants engaged in business transactions in New York or that Defendants maintained an office in New York.

## 2. Whether Plaintiffs May Proceed Under N.Y. C.P.L.R. § 302(a)(3)

As discussed above, under C.P.L.R. § 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." N.Y. C.P.L.R. § 302(a)(3) (emphasis added).

Here, the Complaint alleges claims for false advertising in violation of the Lanham Act, unfair competition, unfair and deceptive trade practices in violation of New York General Business Law § 349, trade libel and defamation, and misappropriation of likeness. (Cmplt. (Dkt. No. 1) ¶¶ 1-3, 51-78) All of Plaintiffs' claims are predicated on the allegedly defamatory Email, however. See id. at ¶¶ 2-3, 28-37, 39, 43, 46.

As discussed above, in applying N.Y. C.P.L.R. § 302(a)(3), "courts . . . look to the substance, not merely the name, of a claim in order to determine whether that claim sounds in defamation." Senese, 2011 WL 4536955, at *11 (citation, quotation marks, and alteration marks

omitted); see also Fischer, 2016 WL 3223627, at *4 (same).  Because N.Y. C.P.L.R. § 302(a)(3)

"exclude[s] a cause of action for defamation[,] . . . [if] [a]ll of plaintiffs' claims are based upon

. . . alleged defamatory statements[,] . . . [p]laintiffs may not evade the statutory exception by

recasting their cause of action as something other than defamation."  Cantor Fitzgerald, L.P., 88

F.3d at 157 (citations and quotation marks omitted).

    Cantor Fitzgerald is instructive here.  In that case, plaintiff alleged defamation,

injurious falsehood, and tortious interference with prospective economic advantage, and argued

that the court had specific personal jurisdiction under N.Y. C.P.L.R. § 302(a)(2) and (a)(3).  The

Second Circuit affirmed the district court's decision granting defendant's motion to dismiss:

> We agree with the court's conclusion that it did not have jurisdiction over [defendant]
> under § 302(a)(2) and (3), which govern in-state and out-of-state tortfeasors
> respectively.  Both subparagraphs exclude "a cause of action for defamation."  Plaintiffs'
> additional claims of injurious falsehood and tortious interference with prospective
> economic advantage likewise do not independently establish personal jurisdiction under
> subparagraphs (2) and (3) because the entire complaint sounds in defamation.  See
> Findlay v. Duthuit, 86 A.D.2d 789, 790 (1st Dept. 1982).  All of plaintiffs' claims are
> based upon [defendant's] alleged defamatory statements.  See Jolivet v. Crocker, 859 F.
> Supp. 62, 65 (E.D.N.Y. 1994).  Plaintiffs may not evade the statutory exception by
> recasting their cause of action as something other than defamation.

Cantor Fitzgerald, 88 F.3d at 157.

    Here, as in Cantor Fitgerald, all of Plaintiffs' claims sound in defamation, because

"[a]ll of [Plaintiffs'] claims are based upon [Defendants'] defamatory statements."  (Id.)  And

because all of Plaintiffs' claims are based upon Defendants' defamatory statements, Plaintiffs

may not utilize N.Y. C.P.L.R. § 302(a)(3) as a basis for specific personal jurisdiction.  Id.; see

also Fischer, 2016 WL 3223627, at *5 (plaintiff alleged defamation, Lanham Act claim, tortious

interference with prospective business advantage, intentional infliction of emotional distress, and

misappropriation of image under the New York Civil Rights Law, all of which were based on

defendants' defamatory statements; held that "neither [§] 302(a)(2) nor [§] 302(a)(3) can support

personal jurisdiction over the [d]efendants" because all of plaintiff's "'claims – regardless of how they are denominated – rest on [d]efendants' allegedly defamatory statements'") (quoting G31000 N. Am., Inc. v. Paris, No. 14 Civ. 3885 (VEC), 2014 WL 6604790, at *3 (S.D.N.Y. Nov. 21, 2014)).

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction is granted.  The Clerk of Court is directed to terminate the motion (Dkt. No. 30) and to close this case.

Dated: New York, New York
        January 26, 2024

SO ORDERED.

Paul G. Gardephe
United States District Judge